# UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH　　　　　　　　　　　　　　　　　　　　　(973) 645-4693
BANKRUPTCY JUDGE　　　　　　　　　　　　　　　　　　　　　　Fax: (973) 645-2606

**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK

SEPT. 17, 2012

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY:  s/ Ronnie Plasner, DEPUTY
```

September 17, 2012

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Sills Cummis & Gross, PC
Valerie A. Hamilton, Esq.
One Riverfront Plaza
Newark, New Jersey 07102
*Counsel for Official Committee of Unsecured Creditors*

Luretha M. Stribling LLC
Luretha M. Stribling, Esq.
133 Westfield Avenue
Suite 3
Clark, New Jersey 07066
*Counsel for Claimant*

Re:　**In re Hudson Healthcare, Inc.**
　　　**Case No: 11-33014 (DHS)**

Page 2
September 17, 2012

Dear Counsel:

      For determination by the Court is the proper classification of a claim objected to by the Official Committee of Unsecured Creditors (the "Committee") of Hudson Healthcare, Inc. (the "Debtor") in its Fourth Omnibus Claim Objection (the "Committee's Objection"). The Proof of Claim, filed by Carmella Flett ("Ms. Flett" or "Claimant"), seeks payment for vacation pay or unused personal time off ("PTO") that accrued prior to the filing of the Debtor's bankruptcy petition.

      Ms. Flett asserts that, upon termination of her employment with the Debtor in August of 2011, she was entitled to payment for accrued and unused PTO from 2010. The Committee objects to the priority classification of the claim and seeks to have it reclassified as a general unsecured claim. The Committee argues that Ms. Flett's claim is neither an administrative expense under 11 U.S.C. § 503(b)(1)(A) as the claim does not represent compensation for services provided post-petition nor a priority claim under 11 U.S.C. § 507(a)(4) since not earned within 180 days prior to the Debtor's filing, respectively.

      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND PROCEDURAL HISTORY

      The relevant facts in this matter are not in dispute. Neither party filed a formal brief or legal memorandum in support of its position regarding the classification of the claim at issue, but rather, each presented support for its respective position at oral argument.

      It was established during oral argument that Ms. Flett was employed as a nurse at the Hoboken University Medical Center (the "Medical Center") from 1995 until August of 2011. (Claimant's Opp'n to Obj. to Claims ("Claimant's Opp'n"), ¶ 7, ECF No. 613) ("Ms. Flett Opposition") During the 2010 calendar year, while employed at the Medical Center, Ms. Flett accrued 76.2 hours of unused PTO. (Claimant's Opp'n, ¶ 3) Under the employment agreement with the Debtor, Ms. Flett was entitled to compensation, or vacation pay, upon the conclusion of her employment with the Debtor for any portion of the PTO accrued and unused in 2010. (Claimant's Opp'n, ¶ 3)

      On August 1, 2011, the Debtor filed a voluntary petition for relief under chapter 11. (Comm.'s Obj., ¶ 1) Upon the conclusion of her employment with the Medical Center in August

Page 3
September 17, 2012

of 2011, Ms. Flett filed a Proof of Claim for money owed to her resulting from her unused PTO accruing in 2010. (Claimant's Opp., ¶ 3) By an omnibus claim objection filed March 9, 2012, the Committee objected to Ms. Flett's Proof of Claim on the grounds that the claim for "Accrued PTO earned post-petition per Debtor books and records should be reclassed to Admin . . . [and] Accrued PTO earned prior to 180 day period eligible for Priority treatment per Debtor books and records should be reclassed to General Unsecured." (Comm.'s Obj., Ex. A) On April 24, 2012, in response to the Committee's Objection, Ms. Flett filed Opposition to the Debtor's Objection.

## DISCUSSION

Addressing the first of the Committee's grounds for objection, this Court must determine whether the compensation owed for accrued PTO falls within the scope of priority granted by § 507(a)(1) for administrative expenses as defined under § 503(b). Pursuant to § 503(b)(1)(A), administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions *for services rendered after the commencement of the case*." 11 U.S.C. 503(b)(1)(A) (emphasis added); *see also In Re Roth American, Inc.*, 975 F.2d 949 (3d Cir. 1992). At oral argument, counsel for the Committee relied on *Roth American*, arguing that while Ms. Flett became entitled to payment for her unused PTO post-petition, it was not for services rendered after the commencement of the case, as required under § 503(b)(1)(A), but rather, for services provided during 2010, the calendar year in which the accrued PTO was not used.

In *Roth American*, the court considered whether severance and vacation pay based on length of employment to which employees became entitled after being terminated post-petition were properly given priority classification as an administrative expense. *Roth American*, 975 F.2d at 951. In *Roth American*, the debtor continued operations post-petition for several months before obtaining approval to sell substantially all of its assets. *Id.* Upon the sale of Roth American and termination of union employees who had provided services to Roth American both pre- and post-petition, the union filed proofs of claim for accrued vacation pay based on the collective bargaining agreement entered into three years prior to the bankruptcy filing. *Id.* The court recognized that,

> [t]he prevailing view regarding vacation pay claims under a collective bargaining agreement in bankruptcy is that such claims are accorded administrative priority only to the extent of the proportionate part of total vacation pay earned during the period from the beginning of the bankruptcy administration to the date of termination of employment.

*Id*. at 957; *see also In re Public Ledger*, 161 F.2d 762, 768–69 (3d Cir. 1947) (vacation pay claims only have administrative priority to the extent that they are based on services provided to

Page 4
September 17, 2012

the bankruptcy estate post-petition). The court, complying with the stated rule and emphasizing the language of § 503(b)(1)(A) that the expenses must be "*for services rendered after the commencement of the case*," held that claims for vacation pay received priority under § 503(b)(1)(A) "only to the extent that they are for compensation for services rendered post-petition." *In re Roth American*, 975 F.2d at 958 (citing *In re Health Maintenance Found.*, 680 F.2d 619 (9th Cir. 1982)).

Here, as in *Roth American*, the Court is concerned with the proper classification of a claim for vacation pay arising from accrued but unused PTO to which Ms. Flett became entitled only upon the conclusion of her employment with the Debtor based on a pre-petition collective bargaining agreement. While Ms. Flett did not become entitled to the actual payment of vacation pay until post-petition, the vacation pay represented compensation for services rendered prior to the bankruptcy filing. Therefore, her claim is not entitled to priority as an administrative expense under § 503(b)(1)(A).

The Court must next consider whether the vacation pay that accrued pre-petition is entitled to priority under § 507(a)(4). Section 507(a)(4) allows priority for

> "allowed unsecured claims, but only to the extent of $11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, (A) for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual."

11 U.S.C. § 704(a)(4)(A).

At oral argument, counsel for Ms. Flett argued that the vacation pay, while accrued in 2010, was not "earned" until Ms. Flett was entitled to receive it upon the conclusion of her employment, and therefore, within the 180-day window of § 507(a)(4). In support, counsel points to authority from the Fourth Circuit, *Matson v. Alarcon*, 651 F.3d 404 (4th Cir. 2011). In opposition, counsel for the Committee argued that a split exists between the Third and Fourth Circuits and that, under Third Circuit case law, compensation is earned at the time it is accrued. *See In re Roth American*, 975 F.2d 949. The Committee argues that since the vacation pay is earned as it is accrued, in this case 2010, it was outside of the 180-day period afforded by § 507(a)(4) and thus not entitled to priority.

When compensation is "earned" is of paramount importance in determining whether it is entitled to priority under § 507(a)(4). In reviewing the controlling authority, this Court is bound by the prior holdings of the Third Circuit, which clearly establish that compensation for unused PTO is "earned" at the time it is accrued. *See In re Public Ledger*, 161 F.2d 762 (3rd Cir. 1947), *cited in In re Roth American*, 975 F.2d at 957.

Page 5
September 17, 2012

In *Public Ledger*, the Court of Appeals decided the proper classification for unused PTO that the debtor's employees had earned, but could not use due to the sudden termination of the debtor's operations. *In re Public Ledger*, 161 F.2d at 765, 767. The bargained for employment agreement provided that the amount of paid vacation to which the employees were entitled was based on length of service, specifically that each would be entitled to one day of paid vacation for every 26 days worked during the preceding year. *Id.* The Court, agreeing with the decision of the Second Circuit, found that "[a] vacation with pay is in effect additional wages." *Id.* at 768 (citing *In re Wil-Low Cafeterias Inc.*, 111 F.2d 429 (2d Cir. 1940)).

The Third Circuit adopted from *Wil-Low* the position that the consideration for a contract to pay wages during a vacation is the service required for the compensation to accrue, or in other words, once the amount of employment or service required for the right to vacation pay were rendered, "vacation with pay was completely earned and only the time of receiving it was postponed." *Id.* at 767–78 (internal citations omitted). Ultimately, the Third Circuit articulated the rule that wages, including vacation pay, that fall within the statutory period preceding the date of filing, are entitled to priority only to the extent they were accrued based on services rendered within that period. *Id.* at 769. The court explained further that,

> Wages given priority under Sec. 64(a)(2) means wages which are owing at the time of bankruptcy even though they may not be due in the sense of being immediately payable, and which have accrued within three months. Where employees clerks are given vacations with pay, but pay is withheld until the end of the year, the employer in the meantime becoming bankrupt, they are entitled to prove their claims under Sec. 64, sub. (a)(2) . . . . Where only part of the claim accrues within the three months, it is entitled to priority only as to that part.[1]

*Id.* at 769 n.5.

The argument of counsel for Ms. Flett that this Court look to the Fourth Circuit's recent holding in *Matson*, while not unfounded, is ultimately unpersuasive. The court in *Matson*, faced with claims made by employees of the debtor for unpaid compensation owed as part of a severance plan, faced the issue of whether the claimants "earned," as used in § 507(a)(4), the full amount of the severance pay or only a pro-rated portion of that pay based on the amount of services rendered during the statutory pre-petition period of 180 days. *Matson*, 651 F.3d at 407, 408. The opinion of the court discusses in depth the meaning of "earned" as used in the statute and ultimately holds that "an employee earns the full amount of severance pay on the date the

---

[1] Sec. 64, sub. (a)(2), 11 U.S.C.A. 104, that granted priority to "wages, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks . . ." was the predecessor to 11 U.S.C. § 507(a)(4)(A).

Page 6
September 17, 2012

employee becomes entitled to receive such compensation, subject to satisfaction of the contingencies provided in the applicable severance compensation plan." *Id.* at 409. As a result, the employees' claims were allowed priority status to the full amount under the severance plan. *Id.* at 410.

The *Matson* holding is supported by an analysis inapplicable to the case at bar and fails to distinguish itself from Third Circuit precedent. The manner of the vacation pay earned in the case at bar is distinct from the severance pay at issue in *Matson*. In *Matson*, regardless of when the services were rendered, the severance compensation was not earned in any manner until the employees were terminated. *See Matson*, 651 F.3d 409. Here, the vacation pay at issue was not earned upon termination, but rather, it was earned at the end of the 2010 calendar year when Ms. Flett finished the year without taking all of the PTO that she had accrued. Therefore, Ms. Flett earned the vacation pay outside of the 180-day priority period afforded by the Code. *See In re Ledger*, 161 F.2d at 769. This outcome is supported by the underlying purpose of granting priority to such claims. "By assuring employees of the debtor of a greater likelihood of payment for pre-petition labor, it is believed that the employees are more likely to continue their employment, thus preventing dissipation of the debtor's business and preserving or increasing the proceeds that the case can generate for payment of creditors." 4 COLLIER ON BANKRUPTCY ¶ 507.02[1][d] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.). It is difficult to perceive how this purpose is served by granting priority status to claims for vacation pay accrued prior to the statutory period leading up to the debtor's filing for relief. If all accrued claims are entitled to priority, there would be no need for a statutory period as dictated by Congress. Under the claimant's reading of the Rule, claims could be based on vacation pay that accrued any number of years before the debtor was in financial difficulty or even considered filing for bankruptcy. That simply is not the law enacted by Congress.

This Court finds that the unpaid vacation pay to which Ms. Flett was entitled at the conclusion of her employment with the Debtor was "earned" as it accrued in the 2010 calendar year and, as such, is not entitled to priority under § 507(a)(4)(A). Ms. Flett's claim, therefore, is to be reclassified as a general unsecured claim to the extent that it was earned prior to the 180-day period afforded by the Bankruptcy Code.

## **CONCLUSION**

For the reasons stated, the objection by the Committee and the reclassification it seeks is granted. The Court finds that the claim filed by the Claimant is not entitled to priority status under either § 503(b)(1) or § 507(a)(1), and should, therefore, be reclassified as a general unsecured claim.

Page 7
September 17, 2012

   An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

                Very truly yours,

                *s/ Donald H. Steckroth*

                DONALD H. STECKROTH
                UNITED STATES BANKRUPTCY JUDGE

Enclosure